# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**FRENCHIE GREENE,**           )
                               )
    **Plaintiff,**          )
                               )
**v.**                         )   **Case No.: 2:14-cv-01684-JEO**
                               )
**WAL-MART STORES EAST, L.P., et** )
**al.,**                       )
                               )
    **Defendants.**          )

## MEMORANDUM OPINION AND ORDER

This case concerns a "slip and fall" accident occurring at a Wal-Mart store located in Bessemer, Alabama. (Doc. 1 (Complaint)).[1] Before the court is Defendant's[2] motion for summary judgment on Plaintiff's claims of negligence and wantonness. (Doc. 12). The motion has been fully briefed and is properly under submission. For reasons stated below, the court finds that the motion is due to be denied.

**I.     BACKGROUND**[3]

On September 13, 2012, Greene was at Defendant's store with Brittany Mitchell

---

[1] Citations to "Doc(s).____" are to the document numbers assigned by the clerk to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet.

[2] The caption in this case lists numerous fictitious parties; however, the date for adding parties has passed and Wal-Mart Stores East, L.P., is the only defendant in this action.

[3] In deciding a motion for summary judgment, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). The factual statements in this section of the court's opinion do not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007) (noting that "a summary judgment proceeding ... by definition involves no findings of fact").

to purchase a Power Wheel toy for his daughter and some groceries. (Greene Dep. at 130, 137-38).[4] When Greene did not find the toy he was seeking, he and Ms. Mitchell walked to the grocery department. (*Id.* at 147). Greene received a telephone call from his girlfriend, who asked him to purchase some chicken, lettuce and salad dressing while he was at the store. (*Id.* at 148, 173). As Greene walked "past the dairy aisle at the beginning of the bakery aisle turning towards the meat aisle" he notice an undetermined amount of water on the floor. (*Id.* at 155-59). He did not report the water to any Wal-Mart associates. (*Id.* at 160). As Green and Ms. Mitchell walked down the meat aisle, Greene received a second call from his girlfriend. Greene then proceeded towards the chicken in the meat department. (*Id.* at 191-92). About that time, he noticed red spots (purportedly meat blood) at various locations on the floor. (*Id.* at 204-15). The blood spots had marks and dirt running through them as if shopping carts had run over and through them. (*Id.* at 208-09, 271). The largest spot was bigger than a baseball and the smallest spot was a mere drop. (*Id.* at 214). The spots extended from the meat counter through the darker colored tile to the white tile in the aisle. (*Id.* at 215). Greene did not report the blood on the floor to anyone despite the fact that there was a Wal-Mart maintenance associate sweeping the floor on the other side of the aisle. (*Id.* at 227-28, 233).

After getting the chicken, Greene walked back toward the shopping cart. (*Id.* at 235). He was watching the floor so as not to step in the blood. (*Id.* at 208-09, 236).

---

[4]Greene's deposition is located in the record at document 21-1 and 28-2. The court has used the deposition page numbers assigned by the court reporter for the pinpoint references.

Greene then went to the aisle where the salad dressing is sold. (*Id.* at 237). He picked up the dressing and headed to get the lettuce. (*Id.* at 237-41). He returned to the shopping cart, which was still on the meat aisle. (*Id.* at 242). Greene again avoided stepping in the blood spots. (*Id.* at 245-46). About this time, Greene got another call from his girlfriend. During their conversation, she informed him that he had gotten the wrong salad dressing. (*Id.* at 256-57). Green then went to change out the salad dressing. In doing so, he purposely walked around the blood spots. (*Id.* at 259-60). After getting the new dressing, he returned to the cart, trying to avoid the blood. (*Id.* at 263-64). However, at one point, he slipped and fell in blood that was located on the darker part of the tile floor.[5] (*Id.* at 262-64, 268-69; Video 21-4). Greene testified that he was looking down at the floor trying to avoid the blood at the time of the fall.[6] (*Id.* at 264). He landed on his "bottom." (*Id.* at 265-68). He heard a "po[ping]" noise from his left knee as he fell. (*Id.* at 265). Greene noticed liquid on the floor around him and on his clothes. It smelled to him like meat blood. (*Id*. at 263).

Ms. Mitchell found a Wal-Mart employee in the meat department who responded to the incident. (*Id*. at 274-75). While Greene was on the floor, Wal-Mart employees started mopping the floor. (*Id.* at 279). According to Rene Brune, the assistant manager at the Bessemer store:

---

[5]As best the court can discern from the video, Greene fell right on the demarcation line for the dark and light tile. (Doc. 21-4 at 4:18:45).

[6]Plaintiff's counsel argues the video shows Greene looking up, to his right and in front and not at the floor at the time of the fall. (Doc. 28 at 5). The court has examined the video, and finds that immediately prior to the fall, Greene was looking to the right and in front of him. (Doc. 21-4 at 4:18:32-43). At the time of the fall, the court's copy of the video is too distorted to discern which way he was looking. (*Id*. at 4:18:45).

> At the time of the incident, Wal-Mart had safety policies and procedures in place to try to eliminate or reduce potential hazards on the sales floor, including slip, tip and fall hazards. Associates are responsible for zoning their areas of the store throughout the day and are constantly walking the sales floor in their respective departments to be certain the store is clean and safe for customers.

(Doc. 21-4 at ¶ 4).

As a result of the fall, Greene sustained injuries to his lower back and left knee. He has had to endure two knee surgeries since the incident as a result of the fall. (*Id.* at 123-24).

Plaintiff initiated this action in state court on June 24, 2014, (Doc. 1 ¶ 5, Doc. 1-4 at 1). Defendants removed the case to this court. (Doc. 1). They now move for partial summary judgment on Plaintiff's negligence and wantonness claims. (Doc. 20). They have submitted a brief and various exhibits in support of their motion. (Docs. 21 & 22). Plaintiff has filed a brief and exhibits in opposition to the motion. (Doc. 28). Defendants have filed a reply to Plaintiff's brief. (Doc. 29).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue (dispute) of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence that a genuine issue (dispute) of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

The substantive law will identify which facts are material and which are

irrelevant. *Anderson*, 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1330 n.2 (11th Cir. 2013)*; Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993); *Hill v. Wal-Mart*, 510 F. App'x 810, 813 (11th Cir. 2013).[7] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. 249. The court may consider materials including depositions, documents, electronically stored information, affidavits, and declarations in resolving a motion for summary judgment. FED. R. CIV. P. 56(c)(1)(A).

### III.    DISCUSSION

Wal-Mart asserts it owed no duty to Greene because the hazard – blood on the floor – was "open and obvious" and known to him. (Doc. 21 at 17-23). Greene responds that there are material issues of fact as to whether or not the blood sports were "open and obvious" to him prior to his fall. (Doc. 28 at 8). Specifically, Greene argues he "obviously did not see the meat blood on the dark portion of the floor or he would have avoided it like he avoided it on the white tile floor. [He] was not aware of the danger or he would not have walked on that portion of the floor." (*Id*. at 8-9).

#### A.    The Applicable Law

It is undisputed that Greene was a business invitee of Wal-Mart. Accordingly, the applicable law is well-settled:

---

[7]Unpublished opinions of the Eleventh Circuit Court of Appeals are not binding precedent, but are deemed persuasive authority. Eleventh Circuit Rule. 36-2.

> In a premises-liability case, the elements of negligence are the same as those in any tort litigation: duty, breach of duty, causation, and damages. *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002). A store patron is generally considered a business invitee for premises-liability purposes under Alabama law. *See Ex parte Mountain Top Indoor Flea Market*, 699 So.2d 158, 161 (Ala. 1997). A store owner's duty is "to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers." *Denmark v. Marcantile Stores Co.*, 844 So. 2d 1189, 1192 (Ala. 2002) (quoting *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990)). However, because a landowner is not the insurer of the safety of his invitees, *Ex parte Mountain Top*, 699 So. 2d at 161, the owner's duty is negated where the invitee or customer knew or should have known about the hazard that purportedly caused his injury. *Jones Food Co. v. Shipman*, --- So. 2d ----, ---- 2006 WL 3718254 at *6 (Ala. 2006).
>
> This 'open and obvious hazard' rule has been stated many times by the Alabama Supreme Court. "The duty owed to an invitee is limited to hidden defects which are not known to the invitee and would not be discovered by him in the exercise of ordinary care.... The owner of premises has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part. As a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care." *Ex parte Mountain Top*, 699 So. 2d at 161 (internal quotation marks and citations omitted) (quoting and citing *Sisk v. Heil Co.*, 639 So. 2d 1363, 1365 (Ala. 1994); *Harvell v. Johnson*, 598 So. 2d 881 (Ala. 1992); *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980); *Shaw v. City of Lipscomb*, 380 So. 2d 812, 814 (Ala. 1980); and *Tice v. Tice*, 361 So. 2d 1051 (Ala. 1978)).
>
> Alabama follows the Restatement (Second) of Torts, which provides that a landowner is not liable for dangers that are either known or obvious. For a defect to be 'known,' "the plaintiff must be aware of the existence of the condition and must appreciate the danger it involves. 'Obvious' means that the condition and risk are apparent to, and would be recognized by, a reasonable person in the position of the invitee. Therefore, the 'obvious' test is an objective one," *Hines v. Hardy*, 567 So. 2d 1283, 1284 (Ala. 1990) (quoting Rest.2d Torts § 343A (1965)); *see also Ex parte Mountain Top*, 699 So. 2d at 161, whereas the 'known' test is subjective.

*Blalock v. Wal-Mart Stores East, LP*, 2007 WL 1412445, **1-2 (M.D. Ala. May 11, 2007). The Alabama Supreme Court has also stated:

> Whether we speak in terms of the duty owed by the defendant or of contributory negligence of the plaintiff, the plaintiff cannot recover for negligence or wantonness if the plaintiff's injury was caused by an open and obvious danger of which the plaintiff knew, or should have been aware. However, not only must the plaintiff have knowledge of the dangerous condition, but the plaintiff also must have a conscious appreciation of the danger posed by the visible condition at the moment the incident occurred. *Owens v. National Security of Alabama, Inc.*, 454 So. 2d 1387 (Ala. 1984); *Furgerson v. Dresser Industries, Inc.*, 438 So. 2d 732 (Ala. 1983); *Elba Wood Products, Inc. v. Brackin*, 356 So. 2d 119 (Ala. 1978); *Kingsberry Homes Corp. v. Ralston*, *supra*. The Court in *F.W. Woolworth Co. v. Bradbury*, 273 Ala. 392, 140 So. 2d 824 (1962), and again in *Kingsberry Homes*, *supra*, reaffirmed that "we have long been committed to the proposition that the plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury." 273 Ala. at 394, 140 So. 2d at 825-26.

*Marquis v. Marquis*, 480 So. 2d 1213, 1215-16 (Ala. 1985). United States District Court Judge Callie Granade has also stated that "the Alabama Supreme Court has 'held that a summary judgment is proper on the issue of whether a defect was open and obvious when the *undisputed* evidence shows that the plaintiff was aware of the danger, appreciated the danger, and acted more carefully because of the perceived danger.' " *Gordon v. Wal-Mart Supercenter*, 2009 WL 2762831, *4 (S.D. Ala. Aug. 28, 2009) (quoting *Harding v. Pierce Hardy Real Estate*, 628 So. 2d 461, 463 (Ala. 1993) (emphasis in original)[8]).[9]

---

[8]The court also noted:

> Furthermore, "once it has been determined that the duty owed to an invitee has been breached," a determination of "whether the plaintiff should have been aware of the defect [is] normally [a] question[ ] for the jury." *Bogue* [*v. R&M Grocery*], 553 So. 2d [545,] 547 [(Ala. 1989)].

*Gordon*, 2009 WL 2762831 at 4, n.2.

[9] In *Humphrey v. Wal-Mart Stores East,* LP, 2013 WL 5707246 (N.D. Ala. Oct. 21, 2013), United States District Judge David Proctor stated, "[Q]uestions of contributory

7

B.     Analysis

Turning to the circumstances in this case, Greene argues that summary judgment is due to be denied because "the evidence is that [he] had only observed small spots of meat blood in various places on the white tile floor ... in the area of the meat aisle. There is no evidence that [he] was aware that meat blood covered the surface of the floor ... where [he] fell." (Doc. 28 at 10).  Wal-Mart retorts that the evidence is undisputed that Greene "not only saw the red meat blood on the floor as he navigated the grocery department, but he appreciated it as a potential threat." (Doc. 29 at 2).  Wal-Mart also argues that Greene mischaracterizes and contradicts his deposition testimony. (*Id*.)

With regard to the size and location of the meat blood, Greene's deposition testimony reveals that he was aware there were "little puddles" of blood, ranging in size from small drops to areas "bigger than a baseball" on the floor. (Greene Dep. at 213-14). According to Greene, the drops were "all over the floor" on both the white and dark tile. (*Id*. at 214-15, 262).  He also stated that the shopping carts traveling over the spots caused "marks on the floor." (*Id.* at 207-09, 211-12, 271).  Greene further testified that he was trying to avoid stepping in the blood as he walked back to his cart immediately before the incident (*id*. at 263-64) and he fell in the same area he had seen the blood spots previously (*id*. at 269-71).

Greene unequivocally was aware of the presence of the blood on the floor in the area in front of the meat department.  He saw it during the multiple times he traversed the

---

negligence, assumption of the risk, and whether the plaintiff should have been aware of the defect, are normally questions for the jury." *Id.* at *4 (citing *Williams v. Bruno's Inc.*, 632 So. 2d 19, 22 (Ala. 1993) (quoting *Bogue v. R & M Grocery*, 553 So. 2d 545, 547 (Ala. 1989) (internal quotations omitted)).

area and he purposely attempted to avoid it. Additionally, he generally appreciated the danger posed by the blood, which also is evidenced by the fact that he was trying to avoid the blood spots as he traversed the meat department. However, the court cannot say as a matter of law that he had knowledge of the condition in the immediate area where he fell, which appears to have been located just behind his cart in the dark portion of the floor in the meat department. The video recording of Greene's actions immediately before he fell suggests he was not particularly concerned about the condition of the floor. Although Greene's head movements the second or two before the fall are not clear on the recording, the prior ten seconds are clear. Greene is walking toward the shopping cart and is looking off at times to the side. He does not appear to be focused on the floor. (Doc. 21-4 at 4:18:32-43). Viewing the evidence as the court must at this juncture, it does not appear that he appreciated the condition of the floor at that location or the danger presented by the substance he slipped on in that instance. In so finding, the court recognizes that this is a very close question. The court further notes that the Alabama Supreme Court has long recognized that whether a plaintiff should have been aware of the situation (*see Bogue*, 553 So. 2d at 547 and *Humphrey*, 2013 WL 5707246, at *4) and whether plaintiff appreciated the danger (*F.W. Woolworth Co.*, 273 Ala. at 394, 140 So. 2d at 825-26) are almost always questions of fact for the determination of the jury. Accordingly, the court finds that Defendant's motion for summary judgment is due to be denied.

### IV.   CONCLUSION

Premised on the foregoing, Defendant's motion for summary judgment (doc. 20) will be and hereby is denied.

**DONE and ORDERED**, this the 3rd day of June, 2016.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge