FILED

2016 Jun-28  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **FRENCHIE GREENE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:14-cv-01684-RDP** |
| | } | |
| **WAL-MART STORES EAST, L.P.,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

"People make mistakes." *Conkright v. Frommert*, 559 U.S. 506, 509 (2010).  Although that was the opening line in one of the Supreme Court's ERISA decisions, it applies equally here as well. Sometimes the mistake people make is spilling things on the floor.[1]

This is a slip and fall case in which Defendant has moved for summary judgement. (Doc # 20). On June 3, 2016, the Magistrate Judge entered a Report and Recommendation.  (Doc. # 32). He recommended that Defendant's Motion for Summary Judgment (Doc. # 20) be denied. Defendant filed an Objection to the Report and Recommendation on June 16, 2016. (Doc. # 33). After careful and independent review, and for the following reasons, the court concludes Defendant's Objection (Doc. # 33) is due to be sustained, and its motion for summary judgment granted.

---

[1] "When something goes wrong ... the natural tendency is to lay blame. The misattribution of blame is one reason we make the same mistakes over and over again. We learn so little from experience because we blame the wrong cause. Knowing what happened alters our perception of why it happened." Joseph T. Hallinan, *Why We Make Mistakes* (2010).

## I.     Summary of Relevant Facts

Plaintiff Greene and his friend, Brittany Mitchell, were in the grocery department of Defendant's store seeking to purchase groceries. (Greene Dep. (contained in Docs. # 21-1 and 21-2) at 148, 173, 191-92). Plaintiff's girlfriend called him while he was in the store and asked him to purchase various items. (*Id*.). As Greene walked "past the dairy aisle at the beginning of the bakery aisle turning towards the meat aisle" he noticed water on the floor. (*Id*. at 155-59). He did not report the water to any Wal-Mart associates. (*Id*. at 160).

Greene then proceeded towards the meat department. (*Id*. at 191-92).  At about that time, he noticed red spots (purportedly meat blood) at various locations on the floor. (*Id*. at 204-15). The blood spots had marks and dirt running through them (as if shopping carts had run over and through them).  (*Id*. at 208-09, 271).  The largest spot was bigger than a baseball and the smallest spot was a mere drop.  (*Id*. at 214). The spots extended from the meat counter through some darker colored tile near the meat counter to the white tile in the aisle. (*Id*. at 215). Greene did not report the blood on the floor to anyone, even though there was a Wal-Mart maintenance associate sweeping the floor on the other side of the aisle.  (*Id*. at 227-28, 233).  As Greene went here and there in the store (at the direction of his girlfriend's telephonic instructions), he deliberately avoided stepping in the blood spots. (*Id*. at 245-46, 259-64).  However, eventually, he slipped and fell in blood that was located on the darker part of the tile floor.  (*Id*. at 262-64, 268-69; Video 21-4).

With regard to the blood, Plaintiff agreed during his deposition that "if you are watching where you are going … anyone would see it."  (*Id*. at 252-53).  He testified that he did not warn Mitchell, his shopping companion, about the blood spots because he did not think it necessary

2

because the spots were obvious to him.  (*Id.* at 252-53).  "You can see if there is blood on the white tile, I mean. And the dark one, it ain't that dark that you can't see that there's blood on the floor. Yes, I saw it."   (*Id.* at 261).  Also, in his deposition, to the question "do you understand that if you step in liquid, that it might cause you to slip and fall?"  Plaintiff responded "Yes. I understand that."  (*Id.* at 216).

## II.    Analysis

In his Report and Recommendation, the Magistrate Judge reported that, because the evidence was not clear that Plaintiff appreciated the existence or danger of the *particular* blood spot on which he slipped, there was a question of fact which precluded summary judgment in this slip and fall case.  In making this report, the Magistrate Judge relied on, among other things, this court's opinion in *Humphrey v. Wal-Mart Stores East, LP*, 2013 WL 5707246 (N.D. Ala. Oct. 21, 2013).  In that case, this court stated, "questions of contributory negligence, assumption of the risk, and whether the plaintiff should have been aware of the defect, are normally questions for the jury." *Id.* at *4 (citing *Williams v. Bruno's Inc*., 632 So. 2d 19, 22 (Ala. 1993) (quoting *Bogue v. R & M Grocery*, 553 So. 2d 545, 547 (Ala. 1989) (internal quotations omitted)).

In *Humphrey*, however, the question was "whether Plaintiff should have been aware of the water on the floor."  *Humphrey*, 2013 WL 5707246, at *4.  The plaintiff in that case did not testify that she was aware of the water in which she slipped; therefore, whether she was aware of the liquid was an issue of fact.   *Id.*   Determining her awareness under those circumstances necessarily involved credibility determinations and was a question for a jury to resolve.  *Id.*   But this case is different.  Here, in contrast to *Humphrey*, Plaintiff has unequivocally testified that he

was aware of the blood spots, aware of the danger that he could slip in them, had avoided the spots multiple times, and the blood spots were open and obvious.  (Greene Dep at 216, 252-53, 261).

Under Alabama law, if liquid on a floor is an open and obvious danger that reasonably should have been observed by a plaintiff (and, indeed, in this case Plaintiff admits he actually observed the liquid), it follows that a defendant's common-law duty to warn of or eliminate that hazard is negated as a matter of law. *Arnold v. Wal–Mart Stores, Inc.*, 2009 WL 4827389 *4 (M.D. Ala. 2009); *Jones Food Co., Inc. v. Shipman*, 981 So.2d 355, 362 (Ala. 2006).  The "entire basis of a [business's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries." *Cook v. Wal-Mart Stores, Inc.*, 795 F.Supp.2d 1269, 1273 (M.D. Ala. 2011) (quoting *Fowler v. CEC Entm't*, 921 So.2d 428, 432-33 (Ala.Civ.App. 2005) (in turn quoting *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194 (Ala. 2002)) (internal quotations omitted).

> The duty to keep premises safe for invitees applies only to defects and conditions which are in the nature of *hidden* dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and *would not be observed by him in the exercise of ordinary care*. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.

*Lamson & Sessions Bolt Co. v. McCarty*, 234 Ala. 60, 63, 173 So. 388, 391 (1937) (quoting 45 C.J.S. § 244, p. 837) (emphasis added). "[T]he focus of our premises liability law is not on the care that may have been exercised by the invitee ..., but on relieving a premises owner of a legal liability where an invitee knew of the danger that caused the injury or should have observed that

danger through the exercise of reasonable care." *Ex parte Industrial Distribution Servs. Warehouse*, 709 So.2d 16, 20-21 (Ala.1997) (emphasis added).

Here, Plaintiff himself candidly testified that the blood spots were open and obvious. He saw them. Therefore, Defendant had no duty to warn Plaintiff of their existence or that they might create a slipping hazard. Because Defendant had no duty to warn Plaintiff of the open and obvious danger, Plaintiff has failed to establish that Defendant breached any duty of care owed to him. *See Ex parte Nesse*, 819 So.2d 584, 590 (Ala.2001) (granting summary judgment based on the open and obvious nature of the element, where plaintiff walked over the hazard 2-3 times, failing to exercise reasonable care to appreciate the hazard). It follows, therefore, Defendant is entitled to summary judgment on Plaintiff's negligence claim.

In addition to his negligence claim, Plaintiff's Complaint also asserts a wantonness claim based upon the same set of facts. Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala. 1994) (emphasis in original)). *See also* Ala. Code § 6–11–20(b)(3) (1975) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others."). Wantonness, "requires more than a showing of some form of inadvertence on the part of the [defendant]; it requires a showing of some degree of conscious culpability." *Ex parte Anderson*, 682 So.2d 467, 469 (Ala. 1996) (citing *George v. Champion Ins. Co.*, 591 So.2d 582 (Ala. 1991)).

Plaintiff has not presented any evidence about the state of mind of any of Defendant's employees which would suggest that the failure to mop up the blood spots is evidence of wanton conduct.  "Evidence that an accident occurred, without evidence that the defendant or its agents were conscious of … the potential for injury, is insufficient to prove wantonness under Alabama law." *Katrensky v. United States*, 732 F. Supp. 2d 1194, 1203-04 (M.D. Ala. 2010). [2]

## III.  Conclusion

For all of the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's negligence and wantonness claims.  A separate order will be entered.

**DONE** and **ORDERED** this June 28, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[2] The court notes this irony: Plaintiff admits he did not inform an employee of Defendant of the presence of either of the slipping hazards he encountered -- the water or the blood spots. Informing Defendant's employees of the presence of the liquid would have given Defendant the opportunity to mop the area. Such that another customer, who might not have been as observant as Plaintiff, would not slip in them.